UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CONELLA MENEFEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 1:07-CV-202 PS |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Colleen Menefee is an African-American woman who worked as a package car driver for UPS for many years until she injured her back on the job in 2003. According to her Complaint, injured white males were given management positions as accommodations for their disabilities, but she, an African-American woman, was not. Menefee also alleges that later, when she tried to get UPS's doctor to release her from the physical restrictions that prevented her from returning to work, UPS imposed higher physical requirements on her than the standard requirements placed on all other drivers. Menefee brought this action, alleging that UPS discriminated against her on the basis of her sex and race. Before the Court is Defendant's motion to dismiss. Because Menefee's allegations from the 2006 time period are not time-barred, UPS's motion to dismiss her sex and race discrimination claims are denied. But because she did not exhaust her Title VII retaliation claim before the Equal Employment Opportunity Commission (EEOC), that claim is dismissed.

### I. BACKGROUND

According to the Complaint, Plaintiff Conella Menefee is an African-American woman who has worked for UPS as a package car driver since July 1994. (Compl. ¶¶ 3, 5.) In 2003, she injured her back on the job and was taken off of work with "permanent" restrictions. (*Id*. ¶ 7.)

She contacted the UPS District Workforce Planning Manager to ask about getting a reasonable accommodation under the terms of her union's Collective Bargaining Agreement.  (*Id*. ¶ 8.)  She believes that UPS has allowed injured white males to take management positions as accommodations for their injuries.  (*Id*.)  On June 18, 2004, she received a letter from the Workforce Planning Manager stating that she was not eligible for a reasonable accommodation under the Americans with Disabilities Act (ADA).  (*Id*. ¶ 9.)

On July 2, 2004, Plaintiff wrote to the Workforce Planning Manager to complain about "being left in limbo" about her employment status.  (*Id*. ¶ 10.)  She stated that she knew of white employees that were given work accommodations under the collective bargaining agreement.  (*Id*.)  She complained that she had "on various occasions asked or even applied for other jobs within the company," but had "always been met with unfair and unjust practices."  (*Id*.)

Plaintiff again attempted to obtain a management position in September 2004.  (*Id*. ¶ 11.)  She was given an assessment test, but did not get an interview.  (*Id*.)  She believes that UPS lied to her when it told her that she did not obtain a high enough score on a written psychological exam to be considered for the position.  (*Id*.)  She again notified human resources of her desire to apply for a management position in November 2005 and March 2006.  (*Id*. ¶ 12.)

In March 2006, Plaintiff passed a functional capacity evaluation for heavy lifting.  (*Id*. ¶ 13.)  The results of the evaluation reported that she was qualified to work at the "HEAVY Physical Demand Level for an 8 hour day according to the Dictionary of Occupational Titles.  Her specific acceptable Leg Life capability was 70.0 lb and Torso Lift capability was 80.0 lb "  (*Id*.)  As a result of the exam, the company physician, Dr. Lazoff, released her to return to her duties as a package car driver, with no restrictions.  (*Id*. ¶ 14.)  However, UPS still refused to put

Plaintiff back on the job, and told her that the safety department needed to investigate her condition further.  (*Id*. ¶ 15.)  On May 18, 2006, she filed a grievance with her union asking to be reinstated to her former position.  (*Id*. ¶ 16.)  After she filed the grievance, she was told that she needed to see Dr. Lazoff a second time for another review of her condition.  (*Id*. ¶ 17.)  On July 28, 2006, Lazoff told Plaintiff that he could not release her to her old position because she could not lift 70 lbs. over her shoulder level.  (*Id*. ¶ 18.)  Plaintiff alleges that lifting 70 lbs. above shoulder level has never been one of the job requirements of a package car driver, but that Lazoff evidently relied on erroneous information that he received from Defendant's worker's compensation nurse.  (*Id*.)

Defendant then sent Plaintiff to a Dr. Cavanati for a second opinion; on September 11, 2006, Cavanati released Plaintiff to return to her job with no restrictions.  (*Id*. ¶¶ 19-20.)  However, Defendant continued to refuse to return her to her job, and instead insisted that Plaintiff be evaluated by yet another physician.  (*Id*. ¶ 21.)  As of the time the Complaint was filed, Plaintiff had not seen a third physician.

Menefee filed her EEOC Charge on October 5, 2006, alleging that UPS discriminated against her on the basis of race, sex, and disability. (Def.'s Ex. 2.)  She claimed that UPS held her to different lifting requirements than it set for other employees. (*Id*.)  She also claimed that two male employees had back problems, yet were allowed to work. (*Id*.)  On July 2, 2007, having received her right-to-sue letter, she filed this lawsuit.  In her Complaint, she alleged that UPS discriminated against her on the basis of race and sex, but she dropped her ADA charge and added a retaliation claim.  (Compl. ¶¶ 23-24.)

UPS moves to dismiss, arguing that Menefee's race and sex claims are time-barred, and

3

that she never exhausted her retaliation claim.  UPS also claims that Menefee pled herself out of court by alleging facts demonstrating that UPS acted in compliance with the collective bargaining agreement that governed the handling of Menefee's grievance.  UPS attached the collective bargaining agreement to its motion.  Menefee then filed a "Response in Opposition to Defendant's Motion to Dismiss and Designation of Evidence," to which she appended her own affidavit describing the course of events between the parties since she filed her Complaint.  UPS then asked that Menefee's affidavit be stricken, yet remarkably the company attached its own evidence – a letter from Dr. Lazoff – to its reply.

## II. DISCUSSION

Rule 12(b)(6) provides for the dismissal of claims that fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In the Rule 12(b)(6) context, a district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Moranski v. Gen. Motors Corp*., 433 F.3d 537, 539 (7th Cir. 2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

At the outset, because both parties have submitted evidence to support their arguments, I must consider which of their exhibits to evaluate in reviewing the motion to dismiss.  "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.  Such documents may be considered by a district court in ruling on the motion to dismiss."  *Wright v. Associated Ins. Cos.,*

*Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). However, "the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972. Defendant asks the Court to consider Plaintiff's EEOC charge, the collective bargaining agreement, and a statement by Dr. Lazoff. Plaintiff seeks inclusion of her own affidavit.

Plaintiff's EEOC charge is referenced in the Complaint, and is central to her claim. *Marshall v. La-Z-Boy, Inc.*, 2007 WL 3232188, at *2 (N.D. Ind. Oct. 30, 2007) (collecting cases in which courts considered EEOC charges that were attached to defendant's motion to dismiss); *Perkins v. Univ. of Ill. at Chicago*, 1995 WL 680758, at *3 (N.D. Ill. Nov. 14, 1995) (same). Plaintiff herself has not objected to the exhibit. Therefore, I will consider it in evaluating the present motion.

The collective bargaining agreement is a horse of a different color; it is not central to Menefee's claims. Menefee alleges that she was discriminated against on the basis of race and sex over the course of more than two years, not that UPS breached the provisions of the CBA. Thus, whether or not UPS complied with the physical examinations provision of the CBA is neither here nor there with regard to whether the company treated Plaintiff unfavorably compared to white men.

The same applies for Dr. Lazoff's statement which UPS has asked me to consider. The only purpose for including Dr. Lazoff's statement is to stake out UPS's defense that Lazoff's initial decision to release Menefee was based on his mistaken belief that she was returning as a manager, not a driver. Obviously, it falls well outside the pleadings, and cannot be considered on a motion to dismiss. In addition, Menefee's affidavit essentially restates the allegations of the

5

complaint and includes new facts about developments since the complaint was filed – therefore, it is certainly not central to the complaint.  Thus, the Court will consider the EEOC charge and exclude all other evidentiary materials in deciding the motion to dismiss.

**A. Whether Plaintiff's Title VII Claims Are Time-Barred**

An individual wishing to challenge an employment practice under Title VII of the Civil Rights Act of 1964 must file a charge within 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  Plaintiff filed her EEOC charge on October 5, 2006; accordingly, her Title VII claims are time-barred if they accrued before December 9, 2005.[1]  Indeed, Menefee's EEOC charge explicitly states that discrimination did not begin until December 30, 2005.  (Def.'s Ex. 2.)

Defendant argues that Menefee's claims accrued either in June 2004, when UPS allegedly refused to allow her to return to work with an accommodation, or in September 2004, when it allegedly failed to promote her.  UPS characterizes all of Menefee's subsequent requests for accommodation and promotion as seeking reconsideration of the initial denial.  UPS cites to *Lever v. Northwestern Univ.*, 979 F.2d 552 (7th Cir. 1992), in which the Seventh Circuit stated that "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."  *Id.* at 556.  But UPS overstates the holding of that case.  *Lever* dealt with a university's denial of tenure to a female professor; the employer's "refusal to undo a

---

[1] However, it is important to note that Plaintiff also sued under 42 U.S.C. § 1981, which has a four-year limitations period.  *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382 (2004).  Therefore, as UPS concedes, her § 1981 race discrimination claim is timely.  But because § 1981 does not reach sex discrimination claims, *Friedel v. City of Madison*, 832 F.2d 965, 967 n.1 (7th Cir. 1987), Plaintiff's sex discrimination claims that pre-date December 2005 are time-barred.

6

discriminatory decision" occurred within the context of the university's internal grievance procedures. The court explicitly contrasted the facts in that case with *Webb v. Indiana Nat'l Bank*, 931 F.2d 434 (7th Cir. 1991):

> Lever's situation is well removed from [*Webb*], in which a person applied for jobs with the same employer, was turned down twice, and filed a charge with after the second denial. We held that the applicant was entitled to an opportunity to show that the second decision was independent of the first, in which case she could challenge the second (and only the second) decision. An applicant does not have to sue about the first wrong to be entitled to contest a second. . . . But when the first decision is connected to and implies the second – when, in other words, a single discriminatory decision is taken, communicated, and later enforced despite pleas to relent – the time starts with the initial decision.

*Lever*, 979 F.2d at 556 (citations omitted); *see also Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) (holding that the limitations period was not tolled by employer's failure to remedy its allegedly lawful conduct, therefore claims were time-barred because no discrete actionable violation took place within the limitations period).

Obviously, this case is more similar to *Webb* than to *Lever*. Nothing in the Complaint indicates that Menefee went back to UPS in March 2006 to appeal the company's 2004 refusal to interview her for a management job. Rather, Menefee alleges that she went back in an attempt to return to her job as a driver. (Compl. ¶¶ 13-15.) UPS's alleged failure to allow Plaintiff to return is completely distinct from its failure to promote her or provide her with another accommodation in 2004. Thus, although Menefee cannot bring a Title VII claim for UPS's allegedly discriminatory conduct in 2004, she is entitled to prove that UPS's refusal to let her return to work in 2006 was discriminatory.

Moreover, Menefee is even entitled to go forward with any claim that she was wrongfully denied an accommodation in March 2006 when she sought to apply for a management position.

7

(Compl. ¶ 12.)  It is impossible to determine from the face of the Complaint whether this incident was merely a continuation of UPS's initial failure to accommodate, or whether it was a new, discrete act of discrimination.  *See Miller v. United Parcel Serv., Inc.*, 2008 WL 151842, at *3 (S.D. Ind. Jan. 15, 2008) (denying motion to dismiss on statute of limitations grounds, where it was unclear from the face of the complaint whether particular incidents were simply failures to remedy the initial discrimination, or whether they were discrete actionable violations).  Therefore, the motion to dismiss on statute of limitations grounds is denied.

### B. Whether Plaintiff Has Pled Herself Out of Court

Defendant next argues that Plaintiff "pleads UPS' defense in that its reason for sending Menefee to a third doctor was required by the explicit language" of the collective bargaining agreement.  This argument is frivolous.  First, as discussed above, because the CBA is not attached to the Complaint and is not central to Plaintiff's claim it would be inappropriate for the Court to review its terms at this stage.  Second, the Complaint only pleads that Defendant "is now insisting that Plaintiff be evaluated by a third physician for the fourth time."  Thus, the face of the complaint only pleads that UPS insisted on a third examination, not that UPS was complying with the CBA when it did so.

Finally, even if the CBA were part and parcel of the Complaint, UPS's compliance with the third-physician reexamination policy would not require dismissal of Plaintiff's claims.  Although it might be difficult to prove, UPS could have discriminated against Plaintiff by enforcing the CBA selectively, *i.e.*, by holding her to a higher lifting standard than others or otherwise co-opting the medical review process for discriminatory reasons.  In such a case, compliance with the CBA would not immunize the company from Title VII liability.  *Trans*

8

*World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977) ("[N]either a collective-bargaining agreement nor a seniority system may be employed to violate [Title VII] . . . ."). Therefore, the motion to dismiss on this ground is denied.

## C. Failure to Exhaust Retaliation Claim

Plaintiff brings a Title VII retaliation claim, but she never presented that claim to the EEOC for its administrative review.[2] "[G]enerally, a Title VII plaintiff may bring only those claims that were included in her original EEOC charge, or that are like or reasonably related to the allegations of the charge or growing out of the charge." *Gawley v. Indiana Univ.*, 276 F.3d 301, 313 (7th Cir. 2001) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)) (internal citations omitted). As the Seventh Circuit has stated, "Normally, retaliation [and] sex discrimination . . . charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003); *see also Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 477 (7th Cir. 1999) (retaliation claim not reasonably related to discrimination claim where there is no factual overlap evident from the body of the EEOC complaint).

Menefee did not include retaliation in her EEOC charge. And in her response to the motion to dismiss, Plaintiff does not offer any explanation of how her retaliation claim is "like or reasonably related to" her EEOC charge. Nothing in her charge or her Complaint even suggests a factual basis for a retaliation claim. To state a claim of Title VII retaliation, Plaintiff must plead facts supporting that: (1) she engaged in statutorily protected expression; (2) she suffered

---

[2] As discussed in note 1, *supra*, Defendant's motion does not pertain to Plaintiff's § 1981 claim. Defendant concedes that Plaintiff has a valid retaliation claim under § 1981, which does not require exhaustion of remedies. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004).

an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action. *McKenzie*, 92 F.3d at 483. But Menefee has not alleged any statutorily protected expression or any link between such expression and an adverse action on the part of UPS. And although a plaintiff may circumvent the exhaustion requirement on a retaliation claim that arises *after* the filing of an EEOC charge, *id.* at 482-83, Menefee has not alleged that UPS retaliated against her after she filed her October 2006 charge. Therefore, her Title VII retaliation claim is dismissed for failing to exhaust the claim.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (DE 12) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Title VII retaliation claim is dismissed for failure to exhaust administrative remedies. The motion to dismiss Plaintiff's Title VII sex and race discrimination claims on limitations grounds is denied. What remains are Plaintiff's § 1981 race and retaliation claims in their entirety, and Plaintiff's Title VII race and sex discrimination claims related to discriminatory acts that occurred after December 9, 2005. Construing Defendant's reply as a motion to strike, the Court has not considered Plaintiff's affidavit in considering the motion to dismiss, so Defendant's motion to strike (DE 15) is **DENIED AS MOOT**.

**SO ORDERED**.

ENTERED: February 7, 2008.

> s/ Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT